UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
KARLA LOPEZ-SERRANO,

                Plaintiff,

-against-

ALLISON ROCKMORE,

                Defendant.
-------------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-6056(ADS)(GRB)

**APPEARANCES:**

**STEVEN J. MOSER, P.C.**
*Attorney for the Plaintiff*
3 School Street, Suite 70B
Glen Cove, NY 11542
      By:    Steven John Moser, Esq., Of Counsel

**FEATHER LAW FIRM, PC**
*Attorneys for the Defendant*
666 Old Country Road, Suite 605
Garden City, NY 11530
      By:    David S. Feather, Esq., Of Counsel

**SPATT, District Judge:**

On October 15, 2014, the Plaintiff Karla Lopez-Serrano ("Lopez-Serrano" or the "Plaintiff") commenced this action against her former employer, the Defendant Allison Rockmore ("Rockmore" or the "Defendant"), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

On the same day, the Plaintiff filed an amended complaint, which is currently the operative pleading in this case.

On December 1, 2014, Rockmore filed a motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), seeking to dismiss the amended complaint. Rockmore's motion to dismiss is presently before the Court.

On January 5, 2015, Lopez-Serrano opposed the motion to dismiss and cross-moved, pursuant to Fed. R. Civ. P. 15(a), seeking leave of the Court to further amend her complaint. Lopez-Serrano's cross-motion is also presently before the Court.

For the reasons set forth in this opinion, the Defendant's motion is denied and the Plaintiff's cross-motion is granted.

## I.      Background

The following facts are drawn from the amended complaint and are construed in favor of the Plaintiff.

### A.      The Plaintiff's Employment

The parties are both adult individuals residing in Nassau County, New York. Rockmore is an attorney licensed to practice in the State of New York.

In December 2011, Lopez-Serrano became employed as a live-in domestic worker in Rockmore's home in Syosset, New York. Rockmore allegedly paid Lopez-Serrano a salary of $425 to $500 per week. It is alleged that Rockmore neither recorded the hours worked by Lopez-Serrano nor has personal knowledge of the actual hours she worked. Nevertheless, allegedly, the Plaintiff's typical workweek, during which she resided in Rockmore's home, was from Monday morning to Friday evening. Rockmore usually paid the Plaintiff on Fridays.

Lopez-Serrano alleges that she worked for Rockmore on September 10, 11, 12, 13, and 14, 2012 (the "Relevant Time Period").  However, allegedly she did not receive payment on Friday, September the 14th, as would have been the usual occurrence.  To date, Lopez-Serrano asserts that she has not received payment for her work during the Relevant Time Period.

The amended complaint sets forth a series of excerpted text messages that, allegedly, were exchanged between the parties in the following days and weeks. The Court notes that the sampling of messages specifically identified in the amended complaint does not reflect the parties' complete conversations.   In addition, Rockmore provided a computer print-out, which reflects more of the conversations, but that version, too, is obviously incomplete.  Without expressing an opinion at this time as to the appropriateness of considering the text message print-outs on a motion under Rule 12(b)(6), the court will reproduce the parties' conversation insofar as it has been provided in the record:

| | | |
|---|---|---|
| (Sun. 9/16/12) | LOPEZ-SERRANO: | Hi Mrs A,hope u n kids r ok, Mrs A can u give off tomorrow?  Is not inportant i'm just asking to have the day off to do stuff. |
| | ROCKMORE: | I'm sorry Karla.  But I can't this time.  It's a holiday [Rosh Hashana] and I really need your help.  Another time.  Ok? |
| | LOPEZ-SERRANO: | Ok i will see you tomorrow |
| (Mon. 9/17/12) | ROCKMORE: | Hi Karla.  Good morning.  Just checkung to see what time u will be here I have to leave soon.  Thank u |

|  | LOPEZ-SERRANO: | Hi, Mrs A,i'm sorry but i can come to work because i had an emergency of a sister she's sick n she's might go back to el salvador n that's why she ask for my sister n me to come over before she any thing happen.  She leave at 5 hours away from here we r not comeing back in to tomorrow night. |
| (Tues. 9/18/12) | ROCKMORE: | Hi Karla.   I'm sorry you have family emergency.   It sounds like u have a lot to deal with.  The weather is so bad too.  You might as well take care of ur sister for the rest of the week.  I'll see u Monday.  Take care. |
|  | LOPEZ-SERRANO: | Hi,thank you so much.i will see u monday.tell Lande i say hi thanks |
| (Sun. 9/23/12) | ROCKMORE: | Hi Karla.  It's Been a long week.  I haven't heard from u.  I Don't even know if you are back from your sister who lives far away.  Anyway tomorrow is not a good day so don't come.  I will call you tomorrow. |
|  | LOPEZ-SERRANO: | Hi,ok i'll talk to u tomorrow thank you,good night. |
| (Mon. 9/24/12) | LOPEZ-SERRANO: | Hi,Mrs Allison, I'm been waiting for your call.what r u want me to do.come back to work for you or not any more?  I really need to know so i know what to do.please let me know soon. |
| (Tues. 9/25/12) | LOPEZ-SERRANO: | Hi Mrs A, I'm sorry about all this,i really need to talk to you.please call me soon u can thanks.i'm back.i was gonna come to ur house tomorrow.but i don't know if u want me to come to ur house tomorrow or no.please call me. |
|  | ROCKMORE: | Hi Karla I can't talk right now.  I will call u tomorrow.  Tomorrow is not a good day.  So don't come tomorrow.   I will call u tomorreow. |

| | | |
|---|---|---|
| | ROCKMORE: | Karla I'm in court right now.  U left me hanging at a really bad time.  U didn't even have the courtesy to call me that Monday morning [Sept. 17, 2012].  You knew it was a holiday [Rosh Hashana] and u know I have to go to work.  To not call or come to work monday motning after u said u would was not right.  I allowed your little sister to stay in the house this Summer etc.  I thought we had a better relationship than that. |
| | LOPEZ-SERRANO: | Im so sorry what i did to u i just want my stuff and my week pay because u may not let me work for u i am so sorry please forgive me mrs allison |
| | ROCKMORE: | I was hoping that you would be working for me for many years.  December would've been 1 year at my house.  I've paid u for days off when ur mother needed you, given u holidays off.  I just have you Labor Day even though I really needed you that day.  There were no kids home this summer, yet the house is a mess and disorganized.  I overlooked it all. |
| | LOPEZ-SERRANO: | At least let me get my cloths. |
| | | If u r going to pay me pay me when I go get my cloths and if ur not going to pay me then don't |
| (Sun. 9/30/12) | LOPEZ-SERRANO: | Hi, Mrs Allison,please Mrs let me come back to work for you.or just let me get my stuff back please .I'm sorry what i did to  you please for give me and give me another chanse. |
| (Mon. 10/8/12) | LOPEZ-SERRANO: | Hi,Mrs good morning, I just want to let u know . . . [*Omitted from Court Exhibit*] |

| | | |
|---|---|---|
| [*Date Omitted*] | ROCKMORE: | I still can't get over what you did to me.  Not coming to work for days.  Not having the courtesy and respect to call me that u weremt coming.  I had to call you hours after you were supposed to be here.  It was a holiday.  I had family coming.  You left me hanging.  I had to go hire people on an emergency basis.  That cost me money to replace you on an emergency basis.  Mot to mention that i work and . . . [*Omitted from Court Exhibit*] |
| (Sat. 10/20/12) | ROCKMORE: | Hi Karla.  Ur clothes are at the end of the driveway.  Please get them before 9 like I said in my last message.  Thank u |
| | LOPEZ-SERRANO: | Hi, what r about the money? |
| | | Is in there I won't stop coming to ur house if you don't pay me |
| | ROCKMORE: | I've told you.  U cost me hundreds of dollars to replace u on an emergency basis for ur failure to show up. |
| | | Now ur threatening me.  I will call the police. |
| | LOPEZ-SERRANO: | So that's not my business u need to give me my money.I don't care. |
| | ROCKMORE: | This is the last communication I am having w you.  Ur clothes are at the end of the driveway.  I'm not leaving them out all day.  If they r not picked up by 9 I will call the police make a report that those items were here for u to pick up and u didn't pick them up.  Then I will give them to charity.  Don't contact me again.  I've done so much for u and your sisters.  You are disrespectful and threatening!  9 am is the deadline as I told you the other day.  That's it.  End of story. |
| | ROCKMORE: | This will confirm that Ur belongings were picked up in a black/ dark car at approximately 9:10 am.  Plz don't' [*sic*] call or contact to come to my . . . [*Omitted from Court Exhibit*] |

**B.     The State Court Action**

Based on the allegations outlined above, on December 7, 2012, the Plaintiff commenced an action in the Nassau County Supreme Court against the Defendant and her husband, Jonathan Edwards (the "State Court Action").  The State Court Action asserts violations of the NYLL only.

Apparently, discovery was conducted in the State Court Action and the parties' depositions were completed.  The Plaintiff alleges that she expended significant efforts and legal fees in prosecuting that matter.

In her amended complaint, Lopez-Serrano alleged that she intended to discontinue the State Court Action in order to pursue the instant action, which asserts violations of the FLSA in addition to the NYLL.  In this regard, the Court notes that the records maintained by the New York Unified Court System indicate that the State Court Action was discontinued on July 1, 2015.  See Lopez-Serrano v. Rockmore, Index No. 14963/2012, WebCivil Supreme, available at, https://iapps.courts.state.ny.us/webcivil/FCASSearch (last visited September 10, 2015).

**C.     The Instant Action**

In the amended complaint, Lopez-Serrano asserts the following grounds for relief:  (i) Rockmore failed to pay her the federal minimum wage for her work during the Relevant Time Period, in violation of the FLSA; (ii) Rockmore failed to pay her overtime wages, in violation of the FLSA; (iii) Rockmore threatened to call the police, left her clothes in garbage bags at the end of her driveway, and threatened to

give her clothes away to charity as retaliation for Lopez-Serrano's demand that she be paid her wages, in violation of the FLSA; (iv) Rockmore failed to pay her overtime wages, in violation of the NYLL; (v) Rockmore failed to timely pay her weekly wages for work performed during the Relevant Time Period, in violation of the NYLL; (vi) Rockmore failed to furnish wage statements to the Plaintiff, in violation of the NYLL; (vii) Rockmore failed to furnish a wage notice to the Plaintiff, in violation of the NYLL; and (viii) Rockmore threatened to call the police, left her clothes in garbage bags at the end of her driveway, and threatened to give her clothes away to charity as retaliation for Lopez-Serrano's demand that she be paid her wages, in violation of the NYLL.

In connection with these alleged actions, Lopez-Serrano seeks to recover unpaid wages for her work during the Relevant Time Period; unpaid overtime wages for an unspecified time period; damages for failing to provide wage statements and a wage notice, as provided in the NYLL; liquidated damages under both the FLSA and NYLL; and attorneys' fees.

## D. The Additional Facts Contained in the Proposed Second Amended Complaint

In support of her cross-motion for leave to further amend her complaint, Lopez-Serrano submitted a proposed Second Amended Complaint (the "PSAC"). The PSAC adds the following relevant facts:

During her employment with Rockmore, Lopez-Seranno was a live-in domestic worker, as that term is defined in 29 U.S.C. § 216(b)(21). In this regard,

she was required to be present at Rockmore's home from 8:00 A.M. on Monday until 7:00 P.M. on Friday each week.

It is alleged that the parties had no agreement, written or otherwise, to exclude meal periods and other periods of "complete freedom from all duties" from compensable working time. The PSAC alleges that, in the absence of such an agreement, Rockmore was required to pay Lopez-Serrano for all of the time that she was required to be on the premises or on duty, namely 8:00 A.M. on Monday until 7:00 P.M. on Friday.

In this regard, the PSAC alleges that the Plaintiff reported for work on Monday, September 3, 2012 at approximately 8:00 A.M. and remained at the Rockmore residence until approximately 7:00 P.M. on Friday, September 7, 2012. According to the Plaintiff, all of this time was compensable as follows: "[H]er compensable hours were approximately 107 hours, and the minimum wages owed to her were $775.75 (107 x $7.25)." However, Rockmore paid the Plaintiff only $500 for that period.

As to the Relevant Time Period, the Plaintiff similarly reported for work on Monday, September 10, 2012 at approximately 8:00 A.M. and remained at the Rockmore residence until approximately 7:00 P.M. on Friday, September 14, 2012, but never got paid.

The PSAC further alleges that, as retaliation against Lopez-Serrano, Rockmore threatened to subpoena her then-current employer to testify in the State Court Action. Rockmore maintained that the employer's testimony was needed to

verify Lopez-Serrano's claim for lost wages in that matter.  However, even after Lopez-Serrano voluntarily withdrew her claim for lost wages in the State Court Action, Rockmore nevertheless subpoenaed her employer to compel him to testify.  According to the Plaintiff, these actions were designed to injure Lopez-Serrano's employment prospects and were motivated by retaliation against her.

Based on these allegations, which supplement those contained in the amended complaint, Lopez-Serrano asserts the following grounds for relief in the PSAC:  (i) Rockmore regularly failed to pay her the federal minimum wage throughout her employment, including during the Relevant Time Period and the week of September 3, 2012, in violation of the FLSA; (ii) Rockmore threatened to call the police, left her clothes in garbage bags at the end of her driveway, and threatened to give her clothes away to charity as retaliation for Lopez-Serrano's demand that she be paid her wages, in violation of the FLSA; (iii)  Rockmore failed to pay her overtime wages, in violation of the NYLL; (iv) Rockmore failed to timely pay her weekly wages for work performed during the Relevant Time Period, in violation of the NYLL; (v) Rockmore failed to furnish wage statements to the Plaintiff, in violation of the NYLL; (vi) Rockmore failed to furnish a wage notice to the Plaintiff, in violation of the NYLL; (vii) Rockmore threatened to call the police, left her clothes in garbage bags at the end of her driveway, and threatened to give her clothes away to charity as retaliation for Lopez-Serrano's demand that she be paid her wages, in violation of the NYLL; and (viii) Rockmore retaliated against Lopez-Serrano by serving a subpoena on her then-current employer to compel him

to testify in the State Court Action, which was intended to injure the Plaintiff's employment prospects, in violation of the NYLL.

## II.    Discussion

## A.    The Applicable Legal Standards

### 1.    The Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)."  Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

The Court notes that, in support of her motion to dismiss, Rockmore applies "the outdated 'no set of facts' standard that had its origin in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)."  Bilal v. Westchester Cmty. College, 13-cv-3161, 2014 U.S. Dist. LEXIS 87177, at *7 n.2 (S.D.N.Y. June 25, 2014); see Def. Memo of Law at 7 (citing Conley for the now-outmoded principle that dismissal is appropriate only where the Court finds "beyond doubt that the plaintiff can prove no set of facts in support of his or her claims").  As the court in Bilal noted, "[t]hat standard 'earned its retirement' in 2007."  Id. (citing Twombly, 550 U.S. at 563).

### 2.   The Standard for Leave to Amend under Fed. R. Civ. P. 15(a)

Generally, after a statutorily fixed time period, a party requires leave of the Court in order to amend his or her pleading.  See Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.

However, where, as here, the Plaintiff seeks to amend her pleading while a motion to dismiss is pending, the Court " 'has a variety of ways in which it may deal with the pending motion to dismiss, [including] denying the motion as moot [or] considering the merits of the motion in light of the' " PSAC.  Schwartzco Enters. LLC v. TMH Mgmt., LLC, 11-cv-1082, 2014 U.S. Dist. LEXIS 160856, at *3 (E.D.N.Y. Nov. 17, 2014) (Spatt, J.) (internal brackets omitted) (quoting Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

Here, the Court finds that Rockmore had an adequate opportunity to respond to the PSAC, and, in fact, submitted an extensive legal memorandum addressing the merits of Lopez-Serrano's motion to amend.   Accordingly, the merits of Rockmore's motion to dismiss will be considered in light of the PSAC.  See Schwartzco, 2014 U.S. Dist. LEXIS 160856, at *4 (quoting Haag v. MVP Health Care, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012)).

If the PSAC cannot survive the motion to dismiss, then the Plaintiff's cross-motion to amend will be denied as futile.  See id. (quoting Haag, 866 F. Supp. 2d at 140); see also Dougherty v. Town of N. Hempstead Bd. of Zoing Appeals, 282 F.3d

83, 88 (2d Cir. 2002) (noting that "[a]n amendment to a pleading will be futile if a proposed claim could not withstand a motion pursuant to Rule 12(b)(6)).

### 3.  As to Whether the Court May Consider Evidence Outside the Pleading

In the legal memorandum that Rockmore submitted in support of her motion to dismiss, she correctly states that "when reviewing the motion to dismiss, the court is limited to the four corners of the complaint."  <u>See</u> Pl. Memo of Law at 7. However, notwithstanding that statement, she also submitted an affirmation by David S. Feather, Esq., which attaches eight separate documentary exhibits, including:  (i) the Plaintiff's complaint in the State Court Action; (ii) Rockmore's answer in the State Court Action; (iii) the Plaintiff's amended complaint in this action; (iv) an October 16, 2014 Certification Order issued in the State Court Action; (v) the complete transcript of Lopez-Serrano's deposition testimony in the State Court Action; (vi) copies of text messages between the parties; (vii) a letter from Rockmore's counsel to the Plaintiff's counsel, enclosing a check; and (viii) a United States Department of Labor Fact Sheet.

In opposition, Lopez-Serrano also submitted a declaration by Steven S. Moser, Esq., which attached:  (i) the complete transcript of Rockmore's deposition testimony in the State Court Action; and (ii) a second letter from Rockmore's counsel to the Plaintiff's counsel.

As a threshold issue, the Court must consider whether it may consider any of this extrinsic evidence in adjudicating the motion under Rule 12(b)(6).

It is well-settled that "[t]he materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited." Armand v. Osbourne, 11-cv-4182, 2014 U.S. Dist. LEXIS 23911, at *9 (E.D.N.Y. Feb. 24, 2014). In fact, "a court considering a . . . motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings." Vailette v. Lindsay, 11-cv-3610, 2014 U.S. Dist. LEXIS 114701, at *8 (E.D.N.Y. Aug. 18, 2014). Rather, in adjudicating such a motion, the Court may only consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Environmental Servs., 7 F. Supp. 2d at 270 (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)).

" 'Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion.' " Environmental Servs., 7 F. Supp. 2d at 270 (quoting Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

Applying these principles, in its discretion, the Court finds that the complaint in the State Court Action; Rockmore's answer in the State Court Action; and the October 16, 2014 Certification Order issued in the State Court Action, may properly be considered in adjudicating the instant motion to dismiss. In the Court's view,

14

these documents are precisely the kind of public records of which it may appropriately take judicial notice under Rule 12(d).  See In re Mirena IUD Prods. Liab. Litig., 29 F. Supp. 3d 345 (S.D.N.Y. 2014) (noting that "[t]he Court may [ ] rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint" (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998))); Lastra v. Barnes & Noble Bookstore, 11-cv-2173, 2011 U.S. Dist. LEXIS 150112, at *17-*18 n.2 (S.D.N.Y. Jan. 3, 2012) (noting that " 'a court may take judicial notice of public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action' " (quoting Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268-69 (S.D.N.Y. 2005)), aff'd, 523 F. App'x 32 (2d Cir. 2013).

Similarly, in its discretion, the Court finds that, although clearly incomplete, the copy of the parties' text messages, which was submitted in support of Rockmore's motion to dismiss, also falls within the recognized categories of documents that the Court may consider on a Rule 12(b)(6) motion.  In this regard, Lopez-Serrano quoted various portions of these text messages in the amended complaint.  The alleged contents of these messages also form the basis of the Plaintiff's claims of retaliation under the FLSA and NYLL and underpin her allegations of willfulness.  Accordingly, the Court finds it reasonable to conclude that they are both incorporated by reference in and integral to the amended complaint.  See Global Network Communs., Inc., 458 F.3d 150 (2d Cir. 2006) (noting

that documents are integral to a complaint where the plaintiff relied on the terms and effect of the documents in drafting the complaint (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted)); <u>Jones v. Halstead Mgmt. Co., LLC</u>, 14-cv-3125, 2015 U.S. Dist. LEXIS 12807, at *13 (S.D.N.Y. Jan. 27, 2015) ("When the document reflects a factual issue (such as an email correspondence) and the complaint specifically refers to the contents of the e-mail communication, the Court can 'deem the e-mail incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the [allegations in the] complaint.' " (quoting <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 112 (2d Cir. 2010))).

The Court reaches a different conclusion with respect to the transcripts of the parties' depositions in the State Court Action and the communications among counsel.  In the Court's view, none of this evidence was incorporated by reference in the amended complaint.  Nor does it appear that Lopez-Serrano relied upon such evidence in drafting the complaint.  Thus, in its discretion, the Court declines to consider the parties' testimony in the State Court Action and the letters exchanged between counsel in adjudicating the instant motion.

**B.  As to Whether the Plaintiff's Claims for Unpaid Wages are Moot**

Rockmore contends that the Plaintiff's causes of action based on unpaid wages under the FLSA and NYLL are moot.  In particular, Rockmore asserts that she tendered an escrow check in the amount of $500 to the Plaintiff, which

represents her wages for the Relevant Time Period.   The Court rejects this argument for several reasons.

Initially, the Court declines to consider the subject escrow check and cover letter, as such extrinsic documentary evidence was improperly submitted in support of this Rule 12(b)(6) motion.   The Court's consideration of the adequacy of Lopez-Serrano's allegations in this regard is limited to the four corners of the PSAC.   With that in mind, the Court sees no plausible basis for concluding that any of the Plaintiff's wage claims are moot.

Accordingly, to the extent Rockmore seeks to dismiss the Plaintiff's FLSA and NYLL claims based on unpaid wages, her motion is denied.

## C.   As to Whether the Plaintiff is Exempt from the FLSA's Overtime Provisions

Rockmore contends that Lopez-Serrano is precluded from enforcing the FLSA's overtime provisions because live-in domestic workers are statutorily exempt from those provisions.   However, in the PSAC, the Plaintiff withdrew her cause of action for overtime wages under the FLSA.   Accordingly, this subject is moot and the Court need not further address Rockmore's contention in this regard.

## D.   As to Whether the Plaintiff has Plausibly Stated a Claim for Overtime Wages under the FLSA and NYLL

Rockmore contends that the PSAC lacks the specificity required to survive a challenge under Rule 12(b)(6).   However, in support of this contention, Rockmore relies almost singularly upon the Plaintiff's deposition testimony in the State Court Action, which Rockmore believes contradicts Lopez-Serrano's allegations.   However,

this Court has already declined to consider the deposition testimony in the State Court Action as outside the four corners of the pleading.

In opposing Lopez-Serrano's motion for leave to amend, Rockmore asserts that "despite this second opportunity to [amend the pleading], *the Plaintiff has failed to produce sufficient evidence*, or even a general recollection or reasonable inference, to show the amount of time for which she was allegedly not paid correctly." See Def. Memo of Law at 8 (emphasis supplied). This reasoning is unpersuasive, as it fails to address the relevant issue. The Plaintiff is under no obligation to produce any evidence at this early stage of the litigation. On the contrary, the Court's focus is limited to the plausibility of the allegations in the PSAC. With that aim in mind, the Court finds that the PSAC plausibly states enough factual matter to state claims under the FLSA and NYLL.

Furthermore, in arguing in support of dismissal, Rockmore does not adequately distinguish between Lopez-Serrano's overtime claim under the NYLL and her minimum wage claims under both the FLSA and the NYLL. These claims are subject to unique pleading standards and command individualized attention.

First, with respect to Lopez-Serrano's FLSA claim based on Rockmore's alleged failure to pay her the federally mandated minimum wage throughout her employment, her burden at this stage is arithmetical. As was explained in Johnson v. Equinox Holdings, Inc., 13-cv-6313, 2014 U.S. Dist. LEXIS 91786 (S.D.N.Y. July 2, 2014):

> The FLSA provides that every employer shall pay to each of his employees a minimum of $7.25 an hour.   29 U.S.C. § 206(a).   An employee cannot state a claim for a minimum wage violation "unless [his] average hourly wage falls below the federal minimum wage." <u>Lundy v. Catholic Health Sys. of Long Island, Inc.</u>, 711 F.3d 106, 115 (2d Cir. 2013).   A plaintiff's average hourly wage is determined 'by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 CFR § 778.109.

<u>Id.</u> at *7-*8.

This pleading standard was recently reiterated in <u>Serrano v. I. Hardware Distribs., Inc.</u>, 14-cv-2488, 2015 U.S. Dist. LEXIS 97876 (S.D.N.Y. July 27, 2015), where the court observed that " '[t]o state an FLSA minimum wage  claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period.' "   <u>Id.</u> at *6 (quoting <u>Tackie v. Keff Enters. LLC</u>, 14-cv-2074, 2014 U.S. Dist. 130148, at *3 (S.D.N.Y. Sept. 16, 2014)).

Applying these standards, the Court finds that Lopez-Serrano has pleaded enough plausible facts to state a claim for minimum wage violations under the FLSA.  In particular, the PSAC alleges that Lopez-Serrano did not agree to exclude any periods of time from her otherwise compensable working time.  Further, she alleges that during the weeks of September 3 and September 10, 2012, she reported for work on Monday morning at approximately 8:00 A.M. and remained on duty in-residence at Rockmore's home until approximately 7:00 P.M. on Friday evening.  The PSAC alleges that, in both of the specified weeks, Lopez-Serrano worked 107 hours, for which she was compensated at a flat rate of $500.  Arithmetically, this amounts

19

to $4.67 per hour, well below the minimum wage.  On a more developed factual record, it may turn out that the Plaintiff did not, in fact, work all 107 hours during these weeks.  However, at the pleading stage, these mathematically sound allegations suffice to defeat dismissal.

The Court notes that its conclusion is limited to the weeks of September 3 and September 10, 2012.  To the extent Lopez-Serrano alleges simply that these workweeks were also typical of her entire approximately one-year employment, her assertion is conclusory and insufficient to state a claim under the FLSA.  See Gomez v. El Rancho De Andres Carne De Tres Inc., 12-cv-1264, 2014 U.S. Dist. LEXIS 45580, at *9-*10 (E.D.N.Y. Mar. 11, 2014) (Report and Recommendation) (recommending dismissal of an FLSA claim where the complaint did not "describe the amount plaintiff was paid or how many hours he worked"; noting that "[i]n order for the plaintiff's allegations to rise to the level of a plausible FLSA claim, he must provide more detail than the conclusory statement that defendants failed to pay him the minimum wage" (quoting Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 90 (2d Cir. 2013)), adopted, 2014 U.S. Dist. LEXIS 43988 (E.D.N.Y. Mar. 31, 2014).

The Court reaches a similar conclusion with respect to the Plaintiff's overtime claim under the NYLL.  At the outset, the Court notes that the pleading standard applicable to overtime claims under the NYLL is analytically identical to its federal law counterpart under the FLSA.  See Amponin v. Olayan, 14-cv-2008, 2015 U.S. Dist. LEXIS 31778, at *4-*5 (S.D.N.Y. Mar. 16, 2015) (noting that "[t]he

NYLL adopts [the FLSA] standard" and observing that the applicable "pleading standard – and the degree of specificity needed to state an overtime claim under the FLSA and NYLL – has been addressed by the Second Circuit" in a single series of cases).

In this regard, the level of specificity required to state a cognizable claim for unpaid overtime was described in <u>Lundy v. Catholic Health Sys. of Long Island, Inc.</u>, 711 F.3d 106 (2d Cir. 2013) and its progeny. <u>See</u> <u>Dejesus</u>, <u>supra</u>, 726 F.3d at 90; <u>Nakahata v. New York-Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 200-01 (2d Cir. 2013). In particular, "[t]he Second Circuit announced . . . that, 'to state a plausible [ ] overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.' " <u>Burns v. Haven Manor Health Care Ctr., LLC</u>, 13-cv-5610, 2015 U.S. Dist. LEXIS 29194, at *5-*6 (E.D.N.Y. Mar. 10, 2015) (quoting <u>Lundy</u>, 711 F.3d at 114).

Like the minimum wage standard, courts have articulated the overtime pleading standard in arithmetical terms. <u>See, e.g.</u>, <u>DeJesus</u>, 726 F.3d at 88-89 ("[T]allying the plausible factual allegations, [the court] could not get beyond forty hours in any given week and therefore to a plausible claim for overtime"). In order "[t]o satisfy this standard, plaintiffs are not required to 'keep careful records and plead their hours with mathematical precision'; however, the standard requires that plaintiffs provide 'complaints with sufficiently developed factual allegations.' " <u>Burns</u>, 2015 U.S. Dist. LEXIS 29194, at *8 (quoting <u>DeJesus</u>, 726 F.3d at 90).

Applying these standards, the Court is satisfied that the PSAC supplies sufficient factual matter to pass muster under Rule 12(b)(6).   In particular, as noted above, Lopez-Serrano alleges that during the weeks of September 3 and September 10, 2012, she reported for work on Monday morning at approximately 8:00 A.M. and remained on duty at the Rockmore residence until approximately 7:00 P.M. on Friday evening, for a total of 107 compensable hours.  Of importance, she alleges that she was not paid the required time-and-a-half for any hours that she worked in excess of forty.  In the Court's view, such allegations are sufficient to survive dismissal under the trilogy of cases outlined above.  See Lundy, 711 F.3d at 115 (affirming dismissal of FLSA claims where the plaintiffs failed to allege a single workweek in which they worked at least forty 40 hours and also worked uncompensated time in excess of 40 hours).

However, the Court again notes that its conclusion is limited to the weeks of September 3 and September 10, 2012.  To the extent the PSAC alleges generalized overtime violations that occurred during weeks in which Lopez-Serrano did not specifically plead the hours that she worked, she has not stated a viable claim under the FLSA.  See id.

Finally, the Court turns to Lopez-Serrano's claim, made pursuant to NYLL § 191, based on Rockmore's failure to timely pay her wages for work performed during the Relevant Time Period.  That provision of state law "governs the frequency of wage payments for enumerated categories of employees," namely, "manual workers," "railroad workers," "commissioned salespersons," and "clerical

and other workers." <u>Auffarth v. Herald Natl. Bank</u>, 2012 NY Slip Op 33343(U), 2012 N.Y. Misc. LEXIS 6307, at *3 (Sup. Ct. N.Y. Co. July 25, 2012) (citing NYLL § 191(a)-(d)).   Lopez-Serrano does not specifically allege which of these categories of workers she falls into, but alleges that she was "entitled to payment on a weekly basis." <u>See</u> PSAC ¶ 70.  Accordingly, the Court presumes that the Plaintiff is invoking NYLL § 191(a), which applies to "manual workers."  The NYLL defines a "manual worker" as a "mechanic, workingman, or laborer," which, in the Court's view, includes a domestic worker such as the Plaintiff.  <u>See</u> NYLL § 190(4); <u>see also</u> <u>Lopez-Martinez v. Gokul Inc. of N.Y.</u>, 13-cv-467, 2013 U.S. Dist. LEXIS 165311 (N.D.N.Y. Nov. 21, 2013) (describing hotel employees whose primary job duties included cleaning guest rooms and doing the laundry as "manual workers" in a case involving claims under the NYLL).

Relevant here, the statute provides that manual workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  <u>Id.</u> § 191(a)(i).  "An employer's failure to timely pay its employees for their work . . . entitles the employees to sue for their unpaid wages" and related damages.  <u>Id.</u> § 198(1); <u>see</u> <u>Ho v. Target Constr. of NY, Corp.</u>, 08-cv-4750, 2011 U.S. Dist. LEXIS 33365, at *43 (E.D.N.Y. Mar. 28, 2011) (noting that the statute authorizes an aggrieved employee to seek prejudgment interest; attorneys' fees; costs; and, under certain circumstances, liquidated damages).

In this case, Rockmore has not advanced any substantive argument directed at the sufficiency of the pleading as it relates to NYLL § 191(a).  Accordingly, the

Court finds no rational basis for dismissing this claim under Rule 12(b)(6).  The PSAC plainly alleges that Lopez-Serrano reported for work at specified times during the week of September 10, 2012.  The PSAC further alleges that she was not timely paid for the services she performed during that period.  In the Court's view, these assertions plausibly allege a violation of NYLL § 191(a).

Accordingly, to the extent Rockmore seeks to dismiss the Plaintiff's minimum wage and overtime claims on the grounds that they do not satisfy the applicable pleading standards, her motion is denied.

## E.  As to Whether the Plaintiff's Claims under the FLSA are Time-Barred

Rockmore contends that Lopez-Serrano's claims under the FLSA are untimely.  The Court disagrees.

The FLSA requires that any suit to enforce its wage and hour provisions must be commenced within two years after the cause of action accrued.  See 29 U.S.C. § 255(a).  When a violation is alleged to be willful, the limitations period is enlarged from two years to three years.  See id.

As a preliminary matter, the Court must determine the dates on which Lopez-Serrano's various causes of action accrued.  In this regard, the Court notes that " '[a] cause of action [for unpaid and overtime wages] under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated.' " D'Arpa v. Runway Trucking Corp., 12-cv-1120, 2013 U.S. Dist. LEXIS 85697, at *19 (E.D.N.Y. June 18, 2013) (quoting Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005)).

Applying this rule, the cause of action based on Rockmore's failure to pay Lopez-Serrano the minimum wage for the work she performed during the week of September 3, 2012, accrued on September 7, 2012 – the Friday, *i.e.*, the regular payday, immediately following the Plaintiff's uncompensated workweek. Similarly, the claim based on Rockmore's failure to pay the Plaintiff the minimum wage for the work she performed during the Relevant Time Period, accrued on September 14, 2012.

In contrast, the cause of action claim based on retaliation, which arose from Rockmore's threats to call the police against the Plaintiff, leaving her belongings at the end of her driveway, and threatening to donate her clothes to charity, accrued on October 20, 2012, the date of allegedly retaliatory action. See Knight v. Columbus, 19 F.3d 579, 585 (11th Cir. 1994) (holding that where an FLSA retaliation claim is premised upon a discrete act, the statute of limitations begins to run from the time of the act), cert. denied, 513 U.S. 929, 115 S. Ct. 318, 130 L. Ed. 2d 280 (1994).

Parenthetically, the Court notes that Lopez-Serrano's retaliation claim arising from Rockmore's having subpoenaed her employer to testify in the State Court Action was only asserted under the NYLL, and therefore is not implicated in this discussion of federal law.

This action was commenced on October 15, 2014. Thus, even applying the FLSA's two-year statute of limitations, the Plaintiff's retaliation claim is timely.

25

However, Lopez-Serrano's minimum wage claim is time-barred unless Rockmore's conduct was willful, in which case the claim falls within the extended three-year limitations period.  In this regard, the Court notes that the Plaintiff explicitly alleged that Rockmore's conduct was "willful, in that she knew or should have known that her actions, as described [in the PSAC], violated the FLSA."  See PSAC ¶ 57.

Rockmore does not articulate any relevant pleading standard that she contends should be applied here.  Rather, she relied strictly upon cases which were decided in the procedurally inapposite posture of motions for summary judgment.  See, e.g., McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (involving review of a district court's grant of summary judgment); Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449 (S.D.N.Y. 2006) (resolving cross-motions for summary judgment).

Here, again, Rockmore appears to misconstrue the Plaintiff's burden on a motion to dismiss under 12(b)(6).  In particular, she asserts that "[t]here is absolutely no evidence that Ms. Rockmore either knew or showed reckless disregard for the fact that her actions may have been in violation of the FLSA."  Def. Memo of Law at 12.  She also asserts that "the Plaintiff simply cannot make a competent demonstration that there is a trial worthy issue as to" willfulness.

However, contrary to Rockmore's contentions, at the pleading stage of the case, there is no requirement that the Plaintiff proffer evidence as to the viability of her claims or demonstrate the existence of a triable issue of fact.  As noted above,

Lopez-Serrano is required only to plead enough facts to make it plausible that Rockmore acted willfully.  Upon the Court's review of the pleading, she has met this burden.

Aside from explicitly stating that Rockmore's actions were willful, the PSAC also alleges the following facts:  Lopez-Serrano performed services for Rockmore from September 10 through September 14; Rockmore never paid her for those services; when the Plaintiff failed to report to work on Monday, September 17, 2012, Rockmore terminated her.  On September 25 and October 20, 2012, the Plaintiff specifically requested that Rockmore tender her final week's pay.   On both occasions, Rockmore refused.  Instead, Rockmore, a practicing attorney, made the following statements:

> I was hoping that you would be working for me for many years. December would've been 1 year at my house.  I've paid u for days off when ur mother needed you, given u holidays off.  I just have you Labor Day even though I really needed you that day.  There were no kids home this summer, yet the house is a mess and disorganized.  I overlooked it all.

*     *     *

> I still can't get over what you did to me.  Not coming to work for days. Not having the courtesy and respect to call me that u weremt coming. I had to call you hours after you were supposed to be here.  It was a holiday.  I had family coming.  You left me hanging.  I had to go hire people on an emergency basis.  That cost me money to replace you on an emergency basis. . . .

After making these statements, Rockmore also allegedly threatened to call the police if Lopez-Serrano sought to collect the wages in person, and left her belongings at the end of Rockmore's driveway.  Under these circumstances, the Court finds that the allegations in the PSAC, taken as true, are sufficient to permit

the plausible conclusion that Rockmore deliberately failed to pay the Plaintiff for work that she performed, and, further, that Rockmore, an attorney, knew or should have known that doing so constituted a violation of the relevant labor laws. Therefore, the Court finds an adequate basis for applying the three-year statute of limitations for willful violations of the FLSA.

Based on the foregoing, Rockmore's motion, to the extent it seeks to dismiss the Plaintiff's FLSA claims as untimely, is denied.

## F.   As to Rockmore's Contention that the Plaintiff's Overtime Claim is Precluded by her Deposition Testimony

As has been stated in this opinion, the Court is prohibited from considering evidence outside the pleading, including the parties' prior deposition testimony, in adjudicating the instant motion. Accordingly, Rockmore's contention that Lopez-Serrano's overtime claim is precluded by such testimony is not relevant to the instant analysis. To the extent Rockmore seeks dismissal on this basis, her motion is denied.

## G.   As to Whether the Instant Action is Impermissibly Duplicative of the State Court Action

Rockmore contends that this action should be dismissed or, in the alternative, stayed, because it is impermissibly duplicative of the earlier-filed State Court Action. However, as noted above, the State Court Action has since been discontinued. Accordingly, this subject is moot and the Court need not further address Rockmore's contention in this regard.

## H.  As to Whether Dismissal is Appropriate Based on the Amended Complaint Being Unsigned

Rockmore contends that the amended complaint is unsigned and therefore fatally defective under Fed. R. Civ. P. 11(a).  Although it appears that the amended complaint was unsigned, as discussed in this opinion, the Court finds that the PSAC, which *is* signed, is sufficient to survive Rule 12(b)(6) scrutiny.  Accordingly, Lopez-Serrano will be granted leave to file her second amended complaint with the Court, and when she does so, she shall ensure that it complies in all respects with the applicable Federal, Local, and Individual Rules.

## III.   Conclusion

For the reasons stated in this opinion, the Defendant's motion to dismiss is denied in its entirety, and the Plaintiff's cross-motion to amend is granted.  The Plaintiff is hereby granted leave to electronically file her second amended complaint within 20 days of the date of this order.

It is

**SO ORDERED**

Dated: Central Islip, New York
September 16, 2015

/s/ Arthur D. Spatt
ARTHUR D. SPATT
United States District Judge